1111 Ashworth Road
West Des Moines, IA 50265-3538
515.267.5000 Phone
www.guideone.com



**GuideOne Insurance**
PLACE YOUR FAITH IN THE EXPERT

DATE:        9/15/2010

TO:          ROCKLIN BRANCH OFFICE

SUBJECT:     HOUSE OF YAHWEH        POL.   1161-864

FROM:        COMMERCIAL LINES


ATTACHED IS ONE CERTIFIED COPY OF THE ABOVE INSURED'S POLICY

AS REQUESTED BY:  MIKE GRIMES


IF WE CAN BE OF ANY FURTHER ASSISTANCE TO YOU, PLEASE LET US KNOW.



EXHIBIT

A

GuideOne Mutual Insurance Company • GuideOne Specialty Mutual Insurance Company • GuideOne Elite Insurance Company
GuideOne Lloyds Insurance Company • GuideOne America Insurance Company

AS-13207

1111 Ashworth Road
West Des Moines, IA 50265-3538
515.267.5000 Phone
www.guideone.com


**GuideOne** Insurance
PLACE YOUR FAITH IN THE EXPERT

This is to certify that the attached Memorandum of Policy No. 1161-864   of the

GuideOne Lloyds Insurance Company

issued to  HOUSE OF YAHWEH

located at  BOX 2498, ABILENE  TX  79604

is a replica representing the original POLICY.  The original insuring agreement was sent to the policyholder or mortgagee.

UNDERWRITING DIVISION

STATE OF IOWA

COUNTY OF POLK

Sworn to before me the ___14TH___ day of ___SEPTEMBER, 2010___

NOTARY PUBLIC

CAROL ALLEN
Commission Number 720369
My Commission

My Commission Expires_____

GuideOne Mutual Insurance Company • GuideOne Specialty Mutual Insurance Company • GuideOne Elite Insurance Company
GuideOne Lloyds Insurance Company • GuideOne America Insurance Company

AS-13207

# C O M M O N   P O L I C Y   D E C L A R A T I O N S

```
                                    POLICY NO. 1161-864        RENEWAL
NAMED INSURED                   PRODUCER NAME AND ADDRESS
   HOUSE OF YAHWEH                  BOBBY JOHN WEEKS
                                    DBA: WEEKS HUNTER INS AGCY
   BOX 2498                         1041 HICKORY
                                    ABILENE           TX  79604
   ABILENE          TX   79604      42-940 (42 )  (915)676-1608
```

POLICY PERIOD: FROM   10/03/01    TO    10/03/02
    AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
------------------------------------------------------------------------
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.
------------------------------------------------------------------------
COMMERCIAL PROPERTY COVERAGE PART                      $   15,845.00
  FORMS APPLICABLE: CP0142/1292  CP0202/0296
  PCP2310/0396  PCP2311/1098  PCP2314/1098
  PCP7352/1098  PCP7357/1000  PCP7359/0600
------------------------------------------------------------------------
COMMERCIAL GENERAL LIABILITY COVERAGE PART             $    2,453.00
  FORMS APPLICABLE: CG0103/1185  CG2147/0989
  CG2646/0896  IL0021/1185  PCG2510/0396
  PCG7543/0190  PCG7560/1098
------------------------------------------------------------------------
COMMERCIAL CRIME COVERAGE PART                         $      100.00
  FORMS APPLICABLE: CR0111/0387  PCR2610/0396
  PCR2611/0396  PCR7601/0885
------------------------------------------------------------------------
COMMERCIAL INLAND MARINE COVERAGE PART                 $        .00
  FORMS APPLICABLE:
------------------------------------------------------------------------
MECHANICAL, ELECTRICAL AND PRESSURE EQUIPMENT COVERAGE PART  $    .00
  FORMS APPLICABLE:
COVERAGE INCLUDED IN PROPERTY - SEE FORM PCP7357
------------------------------------------------------------------------
  FORMS APPLICABLE TO MORE THAN ONE COVERAGE PART:
  IL0003/1185  IL0168/0992  IL0171/0992
  IL0275/0695  IL0288/1192  PIL2200/1098
  PIL7209/0790

TOTAL PREMIUM OF   $18,398.00.

COUNTERSIGNED  08/07/01  BY _____
              (DATE)          (AUTHORIZED REPRESENTATIVE)

          ------------------------------------

GuideOne Insurance            GuideOne Lloyds
1111 ASHWORTH ROAD               Insurance Company
WEST DES MOINES, IOWA 50265-3538
(515)267-5000
```

# CALCULATION OF PREMIUM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> BUSINESS AUTO COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY — NEW YORK

The following is added:

> The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

# TEXAS CHANGES — DUTIES

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL CRIME — LIABILITY FOR GUESTS' PROPERTY PREMISES COVERAGE FORM
> COMMERCIAL CRIME — LIABILITY FOR GUESTS' PROPERTY SAFE DEPOSIT BOX COVERAGE FORM
> COMMERCIAL CRIME — SAFE DEPOSITORY LIABILITY COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the DUTIES Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage.  The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured under this coverage.  The noti will be given not later than the 30th day after the date of the settlement.

Copyright,  Insurance Services Office, Inc., 1992

IL 01 68 09 92
Page 1 of 1

# TEXAS CHANGES — LOSS PAYMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> FARM COVERAGE PART — LIVESTOCK COVERAGE FORM
> FARM COVERAGE PART — MOBILE AGRICULTURAL MACHINERY
>     AND EQUIPMENT COVERAGE FORM
> COMMERCIAL INLAND MARINE COVERAGE PART

**A. LOSS PAYMENT**

1. With respect to the BOILER AND MACHINERY COVERAGE PART and COMMERCIAL CRIME COVERAGE PART, the following conditions are added.

2. With respect to the COMMERCIAL INLAND MARINE COVERAGE PART, the following conditions replace Item **E.** LOSS PAYMENT in the Commercial Inland Marine Loss Conditions.

3. With respect to the FARM COVERAGE PART, the following conditions replace paragraphs **c.** and **f.** of the Loss Payment Condition:

   **a. Claims Handling**

   (1) Within 15 days after we receive written notice of claim, we will:

   (a) Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgement;

   (b) Begin any investigation of the claim; and

   (c) Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

   (2) We will notify you in writing as to whether:

   (a) The claim or part of the claim will be paid;

   (b) The claim or part of the claim has been denied, and inform you of the reasons for denial;

   (c) More information is necessary; or

   (d) We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

   We will provide notification, as described in **(2)(a)** through **(2)(d)** above, within:

   (i) 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

   (ii) 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

   If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

Copyright, Insurance Services Office, Inc., 1992

# TEXAS CHANGES — CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART — FARM LIABLITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART — FARM LIABILITY COVERAGE FORM
> FARM COVERAGE PART — LIVESTOCK COVERAGE FORM
> FARM COVERAGE PART — MOBILE AGRICULTURAL MACHINERY AND
>     EQUIPMENT COVERAGE FORM
> GLASS COVERAGE FORM
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

**a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(1)** Fraud in obtaining coverage;

**(2)** Failure to pay premiums when due;

**(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

Copyright, Insurance Services Office, Inc., 1993
Copyright, ISO Commercial Risk Services, Inc., 1993

IL 02 75 06 95
Page 1 of 2

**007**

(4) Loss of our reinsurance covering all or part of the risk covered by the policy; or

(5) If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**B.** The following condition is added and supersedes any provision to the contrary.

**NONRENEWAL**

1. We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This Paragraph 2., applies unless the policy qualifies under Paragraph 3. below. If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this polciy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

   **a.** The first Named Insured; and

   **b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

   We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

Copyright, Insurance Services Office, Inc., 1993
Copyright, ISO Commercial Risk Services, Inc., 1993

# TEXAS CHANGES — CANCELLATION AND NONRENEWAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

>  BOILER AND MACHINERY COVERAGE PART
>  COMMERCIAL CRIME COVERAGE PART
>  COMMERCIAL INLAND MARINE COVERAGE PART

**A.** The following is added to paragraph **2.** of the **CANCELLATION** Common Policy Condition:

We pay cancel this policy for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**B.** The following condition is added:

**NONRENEWAL**

We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

Copyright, Insurance Services Office, Inc., 1992

IL 02 88 11 92

Page 1 of 1

**009**

# COMMON POLICY CONDITIONS

**CORNERSTONE PLUS**

All Coverage Parts included in this policy are subject to the following conditions:

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 60 days before the effective date of cancellation if we cancel for any other reason than nonpayment of premium.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraph **1.** and **2.** of this condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1998 GuideOne Insurance

except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

### G. UNINTENTIONAL ERRORS OR OMISSIONS

Failure by you to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided such failure or any omission is not intentional.

### H. KNOWLEDGE OF AN OCCURRENCE

It is understood and agreed that knowledge of an occurrence by your agent, or any servant or employee of yours, shall not in itself constitute knowledge by you, unless an executive officer of your corporation shall have received such notice from its agent, servant or employee.

## MUTUAL POLICY CONDITIONS

**GuideOne Mutual Insurance Company**          **GuideOne Specialty Mutual Insurance Company**

Because this policy is issued by a mutual insurance company, you are a member of the Company issuing the policy while this or any other policy is in force.  While a member you are entitled to one vote only - either in person or by proxy - at meetings of members of the Company.

The Annual Meetings at **GuideOne Mutual Insurance Company** are held at its Home Office on the fourth Thursday of January in each year, at 10:00 a.m.

The Annual Meetings of **GuideOne Specialty Mutual Insurance Company** are held at its Home Office on the third Friday of January in each year, at 2:00 p.m.

**PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY:** No Contingent Liability: This policy is nonassessable.  As the policyholder, you are a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

**IN WITNESS WHEREOF,** the Company issuing this policy has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of the Company at the agency hereinbefore mentioned.

GuideOne Mutual Insurance Company
GuideOne Elite Insurance Company
GuideOne America Insurance Company

GuideOne Specialty Mutual Insurance Company

President

President

Secretary

Secretary

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1998 GuideOne Insurance

PIL 22 00 10 98
Page 2 of 2

# AMENDATORY DEDUCTIBLE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

All Coverage Parts included in this policy are subject to the following:

Except as provided in the next paragraph, if two or more coverages of this policy apply to loss or damage arising out of any one occurrence, we will pay for loss or damage that exceeds the largest single deductible of any coverage that applies to the loss or damage. We will not pay more than the actual loss or damage.

This endorsement does not apply to **CAUSES OF LOSS — EARTHQUAKE FORM.** If that form applies to this policy, its **DEDUCTIBLE** provision will apply to loss or damage caused by or resulting from **Earthquake** or **Volcanic Eruption.**

Copyright 1990 GuideOne Insurance

# C O M M E R C I A L   G E N E R A L   L I A B I L I T Y
## C O V E R A G E   P A R T   D E C L A R A T I O N S   P A G E

POLICY EFFECTIVE        10/03/01                        POLICY NO. 1161-864

NAMED INSURED   HOUSE OF YAHWEH
--------------------------------------------------------------------------------
LIMITS OF INSURANCE
--------------------------------------------------------------------------------

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ 1,000,000 |
| (OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 1,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 500,000 |
| EACH OCCURRENCE LIMIT | $ 500,000 |
| PROPERTY DAMAGE LIMIT(LEGAL LIABILITY)ANY ONE OCCURRENCE | $ 500,000 |
| MEDICAL EXPENSE LIMIT                    ANY ONE PERSON | $ 5,000 |

--------------------------------------------------------------------------------
FORM OF BUSINESS:   ORGANIZATION (OTHER THAN PARTNERSHIP OR JOINT VENTURE)
--------------------------------------------------------------------------------
LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:
--------------------------------------------------------------------------------

001    LEASED
    9930 PRIVATE RD 2585
    CLYDETA          TX   79510


002    LEASED
    9834 PRIVATE RD 2585
    CLYDETA          TX   79510


--------------------------------------------------------------------------------
CLASSIFICATIONS
--------------------------------------------------------------------------------

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | EXPOSURE |
|---|---|---|---|
| CHURCH ATHLETIC ACTIVITIES | 49992 | C | |
| LOSS OF LIFE | 49998 | C | |
| CHURCHES OR OTHER HOUSES OF WORSHIP | 41650 | A | RVNWT |
| VACANT LAND NOT FOR PROFIT | 49452 | U | SS |
| PARSONAGE | 63009 | U | N |
| DIRECTORS AND OFFICERS LIABILITY - OCCURRENCE | 49999 | C | |

PREMIUM BASIS: A-AREA   C-TOTAL COST   M-ADMISSIONS
               P-PAYROLL   S-GROSS SALES   U-UNITS OR EACH

08/07/01                                           PCG 75 00 03 96

# TEXAS CHANGES — CONDITIONS REQUIRING NOTICE

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With regard to Bodily Injury and Property Damage Liability, unless we are prejudiced by the insured's or your failure to comply with the requirement, any provision of this Coverage Part requiring you or any insured to give notice of occurrence, claim or suit, or forward demands, notices, summonses or legal papers in connection with a claim or suit, will not bar liability under this Coverage Part.

Copyright, Insurance Services Office, Inc., 1984

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** The following exclusion is added to COVERAGE A (Section I):

 **o.** "Bodily injury" arising out of any:

  **(1)** Refusal to employ;

  **(2)** Termination of employment;

  **(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, policies, acts or omissions; or

  **(4)** Consequential "bodily injury" as a result of **(1)** through **(3)** above.

 This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**2.** The following exclusion is added to COVERAGE B (Section II):

 **c.** "Personal injury" arising out of any:

  **(1)** Refusal to employ;

  **(2)** Termination of employment;

  **(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, policies, acts or omissions; or

  **(4)** Consequential "bodily injury" as a result of **(1)** through **(3)** above.

Copyright, Insurance Services Office, Inc., 1988

CG 21 47 09 89
Page 1 of 1

# TEXAS ABUSE OR MOLESTATION EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Coverage A — Bodily Injury And Property Damage Liability (Section I — Coverages)** and Paragraph **2., Exclusions** of **Coverage B — Personal And Advertising Injury Liability (Section I — Coverages):**

This insurance does not apply to "bodily injury," "property damage," "advertising injury" or "personal injury" arising out of:

**1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**2.** The negligent:

**a.** Employment;

**b.** Investigation;

**c.** Supervision;

**d.** Reporting to the proper authorities, or failure to so report; or

**e.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

For the purposes of this endorsement, abuse means an act which is committed with the intent to cause harm.

Copyright,  Insurance Services Office, Inc., 1996

# NUCLEAR ENERGY LIABILITY
# EXCLUSION ENDORSEMENT
# (Broad Form)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
> TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such

Copyright, Insurance Services Office, Inc., 1983, 1984

IL 00 21 11 85
Page 1 of 2

"nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material";

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1983, 1984

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**CORNERSTONE PLUS**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V - DEFINITIONS.

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(2)** The "bodily injury" or "property damage" occurs during the policy period.

    **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions.**

This insurance does not apply to:

    **a.** Expected or Intended Injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **b.** Contractual Liability

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)** that the insured would have in the absence of the contract or agreement; or

        **(2)** assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1996 GuideOne Insurance

damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.** Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.** Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e.** Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f.** Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** if the pollutants are brought on or to the premises, site or location in connection with

such operations by such insured, contractor or sub-contractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, con-tain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for dam-ages because of testing for, monitoring, cleaning up, remov-ing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contam-inant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, mainte-nance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to or hired by any insured. Use includes oper-ation and "loading and unloading." Hired includes any contract to furnish transpor-tation of pupils to and from school.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Any length; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured.

(4) Liability assumed under any "insured contract" for the ownership, mainte-nance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright  1996 GuideOne Insurance

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.** War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j.** Damage to Property

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.** Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

**l.** Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.** Additional Exclusions

Exclusions under ADDITIONAL EXCLU-SIONS.

Exclusions **c.** through **n.** do not apply to damage to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III - LIMITS OF INSURANCE.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    **b.** This insurance applies to:

        **(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

        **(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

    This insurance does not apply to:

    **a.** "Personal injury" or "advertising injury":

        **(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

        **(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

        **(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

        **(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

        **(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

    **b.** "Advertising injury" arising out of:

        **(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

        **(2)** The failure of goods, products or services to conform with advertised quality or performance:

        **(3)** The wrong description of the price of goods, products or services; or

        **(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

    **c.** Any loss, cost or expense arising out of any:

        **(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way

respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**d.** Exclusions under ADDITIONAL EXCLUSIONS.

## ADDITIONAL EXCLUSIONS

The following exclusions apply under both COVERAGE A and COVERAGE B:

**1.** If any college or school is operated by you or on your behalf, and that college or school owns or operates an infirmary with facilities for lodging and treatment or a public clinic or hospital, this insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" caused by:

**a.** The rendering or failure to render:

**(1)** Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction or the related furnishing of food or beverages;

**(2)** Any health or therapeutic service, treatment, advice or instruction; or

**(3)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

**b.** The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or

**c.** The handling or treatment of dead bodies, including autopsies, organ donation or other procedures.

**2.** This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" to any student or pupil

arising out of any corporal punishment administered by or at the direction of any insured.

**3.** Any personal injury, bodily injury and mental or emotional pain or anguish, sustained by any person arising out of or resulting from any actual or alleged act of sexual misconduct of any kind. The Company shall have no duty to investigate, settle, defend or pay any claim or suit asserting any act of sexual misconduct or any breach of duty contributing to such act.

**4.** Any personal injury, bodily injury and mental or emotional pain or anguish, sustained by any person arising out of or resulting from professional activities conducted by a licensed psychiatrist, licensed mental health care practitioner, or licensed counseling practitioner.

**5.** Acts, errors or omissions by you as a member of a formal accreditation or similar professional board of directors, of any educational, medical, professional or religious institution.

**6.** Acts, errors or omissions by you as proprietor, superintendent, or "executive officer" of any hospital, sanitarium, medical clinic with bed and board facilities, laboratory, or to acts or omissions arising out of any other similar medical trade, business, employment or profession.

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement.**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians

of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**c.** When the "bodily injury" is caused by an accident that results from practicing, instructing or participating in any physical training, sport or athletic activity or contest whether on a formal or informal basis, we will pay medical expenses on an excess payment basis. Our obligations for payment under excess insurance are explained in **4.b.** Other Insurance under SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS.

**d.** When a covered injury to a claimant results in loss of life within one year from the date of the accident, we will pay an amount equal to the MEDICAL EXPENSE LIMIT for ANY ONE PERSON shown on the COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS PAGE, or $5,000, which ever is greater. We will pay this amount in addition to any payments under **a.**, **b.** and **c.** of this Insuring Agreement.

We will make this payment to **(a)** the parent or guardian if the deceased was a minor; or **(b)** the surviving spouse, if any; or **(c)** a person authorized by law or legally entitled to receive such payment.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

**a.** To any insured, except as provided in **5.b.** under SECTION II - WHO IS AN INSURED.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies, except if the person is engaged in an authorized church sponsored activity.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

**e.** Included within the "products-completed operations hazard."

**f.** Excluded under Coverage A.

**g.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**h.** To any student, with respect to the operation of any college or school (except Sunday school) by you or on your behalf.

**i.** To any person being cared for at any Day Nursery owned and operated by you or on your behalf (except Day Nurseries for the care of children while their parents are attending church activities).

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** Up to $500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**3.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**4.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**5.** All costs taxed against the insured in the "suit."

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1996 GuideOne Insurance

6. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

8. For loss of property of others, not to exceed $500, caused by persons participating in one of your organized activities. Loss shall mean damage or destruction but does not include disappearance, wrongful abstraction or loss of use. This supplementary payment does not apply:

    a. If insurance is otherwise provided under any other Coverage Part of this policy; or

    b. If the loss is covered by any other insurance you have or by any insurance of such person who causes such loss.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

    a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b. This insurance applies to such liability assumed by the insured;

    c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    e. The indemnitee and the insured ask us to conduct and control the defense of that

indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f. The indemnitee:

       (1) agrees in writing to:

           (a) cooperate with us in the investigation, settlement or defense of the "suit";

           (b) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

           (c) notify any other insurer whose coverage is available to the indemnitee; and

           (d) cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

       (2) provides us with written authorization to:

           (a) obtain records and other information related to the "suit"; and

           (b) conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **2.b.(2)** of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

    a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured.   Your   members   are   also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

    **a.** Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.   However, none of these "employees" is an insured for:

    **(1)** "Bodily injury" or "personal injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co- "employee" is either in the course of his or her employment or performing duties

related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any   person   (other   than   your "employee"),   or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**e.** All hierarchal governing bodies concerned with the adoption and enforcement of needful laws and regulations, doctrine and worship for the established denomination of which you are a member, but only with respect to liability arising out of the ownership, maintenance and use of the property by you at the location(s) designated on the COMMERCIAL GENERAL   LIABILITY   COVERAGE   PART DECLARATIONS PAGE and operations

necessary and incidental thereto. But we shall not be liable under this policy to make payment to any such hierarchal body for loss in connection with any claim which is insured by another policy or policies, except in respect of any excess beyond the amount(s) of all valid and collectible payments under such other policy or policies.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

    b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a. Coverage under this provision is afforded only until the 365th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

5. a. The following persons or organizations are also Insureds:

    (1) Any of your members, but only with respect to their liability for your activ-

ities or activities they perform on your behalf, at your direction and within the scope of their duties.

    (2) Any trustee or official; member of any Board, Council, Deaconry or Vestry; "Minister"; Sunday School Superintendent and any Sunday School teachers; or any student teachers teaching as part of their educational requirements; but only with respect to their duties as such.

    (3) Any person(s) who are volunteer worker(s) for you, but only while acting at your direction and within the scope of their duties. However, no volunteer is an insured for:

        (a) "Bodily injury" to:

            (i) A co-volunteer or your "employee" arising out of and in the course of their duties for you; or

            (ii) You, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company);

        (b) "Property damage" to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by:

            (i) A co-volunteer or your "employee"; or

            (ii) You, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company);

    (4) Any church organization authorized or controlled by you.

    b. It is understood and agreed that with respect to individuals named under **5.a.** of this section, Exclusion **2.a.** under Coverage C does not apply.

None of the following is an insured:

    a. any person or organization with respect to the conduct of any current or past partnership, joint venture or limited liability

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1996 GuideOne Insurance

company that is not shown as a Named Insured in the Declarations; or

**b.** any person who is a professional health care services provider with respect to his or her rendering or failure to render professional health care services.

## SECTION III — LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage C;

   **b.** Damages under Coverage A except damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage A; and

   **b.** Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to **5.** above, the Property Damage Limit is the most we will pay under Coverage

A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one "occurrence."

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

8. It is understood and agreed when two or more coverages or policies are issued by us:

   **a.** If the liability coverage provided by the Commercial General Liability Coverage Part of this policy, and any endorsement or other Coverage Part of this policy, provides liability coverage for the same occurrence, the maximum liability under all coverages shall not exceed the limits of liability as provided by the Commercial General Liability Coverage Part of this policy.

   **b.** If this policy and any other policy issued to you by us or any Company affiliated with us apply to the same occurrence (or accident), the maximum liability under all such policies shall not exceed the highest applicable limit of liability under any one policy.

   But conditions **a.** and **b.** above do not apply to any policy issued by us or any affiliate company specifically to apply as excess insurance over this policy.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit.**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e. When you report an occurrence to the compensation carrier insuring your com-
pensation insurance which later develops into a liability claim, coverage for which is provided by the policy, failure to report such occurrence to us at the time of the occurrence shall not be deemed in violation of this Condition (**2.**) upon the distinct understanding and agreement, however, that just as soon as you are made aware of the fact that the particular accident is a liability case rather than a compensation case, you will give notice of the aforesaid occurrence to us.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1996 GuideOne Insurance

**(1)** That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Property insurance against direct physical loss or damage to premises while rented to you or temporarily occupied by you with permission of the owner; or

**(3)** If the loss arises out of the maintenance or use of "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I — Coverage A.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."   If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance;

**(3)** Except that with respect to Coverage C, we will pay all sums necessary to first satisfy all deductible and self-insured amounts under all applicable insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.   Premium Audit.**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6.   Representations.**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7.   Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit"  is brought.

Includes copyrighted  material  of Insurance  Services  Office, Inc., with  its permission.
Copyright  1996 GuideOne Insurance

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V — DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

   (1) The injury or damage arises out of:

      (a) Goods or products made or sold by you in the territory described in **a.** above; or

      (b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

   (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work," or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical explo-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1996 GuideOne Insurance

ration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration. lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders, libels or disparages a person or organization or disparages the goods, products or services of a person or organization;

e. Oral or written publication of material that violates a person's right of privacy; or

f. Wrongful acts, errors or omissions resulting from counseling that attends to the spiritual needs of a person and is performed by:

(1) a "minister" employed by the named insured; or

(2) an "employee" of the named insured or a volunteer; but only

(a) if acting under the direction and control of a "minister" employed by the named insured; and

(b) while acting within the scope of her or his duties as an "employee" or volunteer.

Counseling that attends to the spiritual needs of a person does not include giving advice or assistance in regard to a matter such as, but not limited to, charitable contributions, finance, insurance, investment, law, real estate or tax.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise

complete, will be treated as com-
pleted.

**b.** Does not include "bodily injury" or "prop-
erty damage" arising out of:

**(1)** The transportation of property, unless
the injury or damage arises out of a
condition in or on a vehicle not owned
or operated by you, and that condition
was created by the "loading or
unloading" of that vehicle by any
insured;

**(2)** The existence of tools, uninstalled
equipment or abandoned or unused
materials; or

**(3)** Products or operations for which the
classification, listed in the Declara-
tions or in a policy schedule, states
that products-completed operations
are subject to the General Aggregate
Limit.

**15.** "Property damage" means:

**a.** Physical injury to tangible property,
including all resulting loss of use of that
property. All such loss of use shall be
deemed to occur at the time of the phys-
ical injury that caused it; or

**b.** Loss of use of tangible property that is not
physically injured. All such loss of use
shall be deemed to occur at the time of
the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which
damages because of "bodily injury," "prop-
erty damage," "personal injury" or "advertis-
ing injury" to which this insurance applies are
alleged. "Suit" includes

**a.** An arbitration proceeding in which such
damages are claimed and to which the
insured must submit or does submit with
our consent; or

**b.** Any other alternative dispute resolution
proceeding in which such damages are
claimed and to which the insured submits
with our consent.

**17.** "Temporary worker" means a person who is
furnished to you to substitute for a permanent

"employee" on leave or to meet seasonal or
short-term workload conditions.

**18** "Your product" means:

**a.** Any goods or products, other than real
property, manufactured, sold, handled,
distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose busi-
ness or assets you have acquired;
and

**b.** Containers (other than vehicles), materi-
als, parts or equipment furnished in con-
nection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at
any time with respect to the fitness, qual-
ity, durability, performance or use of
"your product"; and

**b.** The providing of or failure to provide
warnings or instructions.

"Your product" does not include vending
machines or other property rented to or
located for the use of others but not sold.

**18.** "Your work" means:

**a.** Work or operations performed by you or
on your behalf; and

**b.** Materials, parts or equipment furnished in
connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at
any time with respect to the fitness, qual-
ity, durability, performance or use of
"your work"; and

**b.** The providing of or failure to provide
warnings or instructions.

**ADDITIONAL DEFINITIONS**

"Minister" means a person employed by the
named insured to attend to the spiritual needs of
the congregation. Employed by the named
insured includes duly assigned to or appointed by
the named insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright 1996 GuideOne Insurance

# DIRECTOR AND OFFICER LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This **Coverage D** is merged within and is a comprised part of the Commercial General Liability Coverage Form. The coverage provided by this coverage part is distinct and separate from that provided under **Coverage A**, **Coverage B**, and **Coverage C**.

Words and phrases that appear in quotation marks have special meaning. Refer to both **SECTION V -- DEFINITIONS** and the other definitions provided herein which are unique and specific to this coverage part.

**COVERAGE D. DIRECTOR AND OFFICER LIABILITY** is added to **SECTION I -- COVERAGES** as follows:

**COVERAGE D. DIRECTOR AND OFFICER LIABILITY**

1. **Insuring Agreement**

    a. **Indemnification For You and Your "Directors or Officers"**

    We will pay only those sums that you or your "directors or officers" become legally obligated to pay as "damages" because of a "wrongful act" to which this coverage part applies. This coverage part applies only if:

    (1) The "wrongful act" takes place within the "coverage territory", and

    (2) The "wrongful act" must have its first commission during the policy period.

    However, the amount we pay for "damages" is limited in **SECTION III -- LIMITS OF INSURANCE**.

    b. **Defense Obligation**

    We have the right and duty to defend any insured against any "suit" seeking those "damages" to which this coverage part applies. We have no duty to defend any insured against any "suit" seeking "damages" to which this coverage does not apply. We may, at our discretion, investigate any "wrongful act" and settle

any claim or "suit" that may result. However, our duty to defend ends when we have used up the applicable limit of coverage in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS -- Coverage D**.

2. **Exclusions**

    This coverage part does not apply to:

    a. Any "Wrongful Act" arising out of or in any way related to, directly or indirectly to:

        i. "Bodily Injury";

        ii. "Property Damage";

        iii. "Personal and Advertising Injury";

        iv. "Sexual Misconduct" or "Sexual Molestation";

    b. Liability assumed in any contract;

    c. Any liability imposed by the Employers Retirement Income Security Act of 1974 (ERISA) or any amendments thereto, or similar provisions of any State or local statute or regulation;

    d. The failure or omission to procure, renew, or maintain insurance or bonds;

    e. Any claim, notification, or "suit" arising out of:

        (1) An actual, alleged, or threatened discharge, dispersal, release or escape of "pollutants"; or

        (2) Any governmental direction, order or request that you or any insured test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize "pollutants";

Copyright 2003 GuideOne Insurance

f.  Any claim or "suit" arising out of "employment-related practices";

g.  Any claim, action, administrative proceeding, "suit", or hearing brought by or on behalf of any regulatory or administrative agency, including, but not limited to, any right the agency may have as a receiver, liquidator, conservator, or otherwise;

h.  Any claim or "suit" involving title to any real property;

i.  Any claim or "suit" pertaining to ecclesiastical law, statute, canon, rule, or regulation;

j.  Profits made from the purchase or sale of any security within the meaning of ※16(b) of the Securities Exchange Act of 1934 and any subsequent amendments thereto, or similar provisions of any State, municipal, or local statute, regulation, or ordinance;

k.  Any adjudicated: fraudulent, dishonest, willful, or malicious "wrongful act";

l.  Any claim or "suit" asserted or made against any "director or officer" by you, any insured, or any other "director or officer";

m.  Personal profits or advantages which you or your "directors or officers" are not legally entitled; and

n.  Any liability arising out of the Civil Rights Act codified at 42 U.S.C. ※※ 1983 - 1988 or any similar State or local code, regulation or ordinance.

## SUPPLEMENTARY PAYMENTS -- Coverage D

We will pay, in addition to the Limit of Insurance, with respect to any claim we investigate or settle, or any "suit" we defend:

a.  All expenses we incur;

b.  The costs awarded the prevailing party, excluding attorney fees, taxed against an insured in any "suit" we defend;

c.  All interest which accrues after the entry of the judgment and before we have paid, tendered or deposited in court either the amount of judgment or the remaining limit of liability, whichever is less; and

d.  All reasonable expenses incurred at our request, including actual loss of earnings up to $250 per day for missed work.

## SECTION II -- WHO IS AN INSURED

**Section II** is incorporated by reference.

## SECTION III -- LIMITS OF INSURANCE

1.  The Limits of Insurance, specific to this coverage, as designated in the Declarations determines the most we will pay regardless of the number of: claims, "suits", "wrongful acts", insureds or "directors or officers."

2.  Deductible

    From each claim or "suit" which results in payment for:

    (1) "Damages", or

    (2) Any expense, costs, or interest under the Supplementary Payments provisions of this coverage,

    An amount of $2,500 shall be first deducted. We may pay any part or all of the deductible to effectuate a settlement. You agree to promptly reimburse us for such payment.

## SECTION IV -- CONDITIONS COVERAGE D

The following duties have been added and are unique to this coverage part. The remainder of **SECTION IV** is incorporated by reference. Where there is a conflict the conditions and duties provided herein will supercede those contained in **SECTION IV**.

1.  **Duties in the Event of a "Wrongful Act", Claim, or "suit"**

    a.  You agree to give us written notice within thirty (30) days from the date you become aware of any "wrongful act" which may result in a claim or "suit" covered by this coverage. This notice shall contain all information available to you with respect to the time, place and circumstances of the "wrongful act" including the names and addresses of all persons involved and witnesses.

    b.  If a claim is made or a "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit."

    c.  You and any other involved "insured" must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement or defense of the "wrongful act", claim, or "suit";

**(4)** Assist us in the enforcement of any right against any person or organization which may be liable to you or any insured because of "damages" to which this coverage part applies;

**d.** No insured will, except at their own cost, make any payment, assume any obligation, or incur any expense without our consent.

**2. Other Insurance**

When other coverage or insurance is available our obligations are limited as follows:

**a.** Primary Insurance

This coverage is primary except when designated in the Declarations as excess and then **b.** below applies. If there is other primary coverage, we will share with all other insurance by method outlined in **c.** below.

**b.** Excess Insurance

When this coverage is designated as excess our duty to defend is subordinate and secondary to all other insurers. If no other insurer defends, we will defend. However, we will be entitled to the insured's rights against those other insurers.

When this insurance is excess over other insurance, we will pay only our share, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the "wrongful act" in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts.

**c.** Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method. Accordingly each insurer contributes equal amounts until it has paid its applicable limit.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Consequently, each insurer's share is based on the ratio of its applicable limit to the total applicable limits of all insurers.

**SECTION V -- DEFINITIONS -- Coverage D**

The following words or phrases have a specific and unique meaning to this coverage. The remainder of **SECTION V** is incorporated by reference. Where there is a conflict, the definitions provided herein will supercede those contained in **SECTION V**.

**a.** "Alternative dispute resolution" includes, but is not limited to: negotiation, mediation, binding or non-binding arbitration, or summary jury trials.

**b.** "Damages" means only those compensatory damages allowed by law. "Damages" does not include attorney fees, costs or expenses, or punitive or exemplary damages.

**c.** "Director or officer" or "directors or officers" mean those insureds that are appointed or elected and authorized with the responsibility to manage and/or direct your affairs, while acting solely and exclusively in their capacity for you.

**d.** "Employment-related practices" mean:

**(1)** Any act or failure to act, by an insured, in connection with your business; or

**(2)** Any of your policies, or your failure to have a policy

Which directly or indirectly affects a person's employment status or condition with you or prospective employment by you.

**e.** "Sexual Misconduct or Sexual Molestation": is any activity which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual

relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

f.  "Suit" means any proceeding in a civil court to recover "damages" to which this coverage applies.  "Suit" includes an "alternative dispute resolution" proceeding in which "damages" are claimed and to which an insured must submit or does submit with our consent.

g.  "Wrongful act" means a single or a series of interrelated continuing negligent: acts, errors, omissions, misrepresentations, or breaches of duty initiated or ratified by you or one or more of your "directors or officers" acting individually or in concert.

Copyright 2003 GuideOne Insurance

# TEXAS CHANGES

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> SEXUAL MISCONDUCT LIABILITY COVERAGE FORM

**A. COMMERCIAL GENERAL LIABILITY COVERAGE FORM -- CORNERSTONE PLUS**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM -- STEWARDSHIP**

1. Exclusion **3.** Under the ADDITIONAL EXCLUSIONS is deleted in its entirety.

**B. COMMERCIAL GENERAL LIABILITY COVERAGE FORM -- CORNERSTONE PLUS**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM -- COLLEGES AND SCHOOLS**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM -- GENERAL**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM -- ADULT CONGREGATE LIVING FACILITIES**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM -- STEWARDSHIP**

1. Provision **8.** of SECTION III -- LIMITS OF INSURANCE is deleted in its entirety.

2. The following Condition is added to SECTION IV -- COMMERCIAL GENERAL LIABILITY CONDITIONS:

   **NOTICE OF SETTLEMENT OF LIABILITY CLAIM**

   We will notify the first Named Insured in writing of:

   1. any initial offer to compromise or settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

   2. any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

**C. SEXUAL MISCONDUCT LIABILITY COVERAGE FORM**

1. The following exclusion is added to **4.** EXCLUSIONS:

   The insurance granted by this Coverage Form shall not apply:

   To the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, trailer, semi-trailer, watercraft or aircraft.

2. Definition **3.** under **7.** DEFINITIONS is deleted in its entirety and replaced by the following:

   3. "Sexual Misconduct" is any activity which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

3. The following paragraph is added to **5.** SUPPLEMENTARY PAYMENTS:

   Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

4. The last paragraph is deleted in its entirety.

1111 Ashworth Road
West Des Moines, IA 50265-3538
515.267.5000 Phone
www.guideone.com



**GuideOne**
Insurance
PLACE YOUR FAITH IN THE EXPERT

DATE:        9/15/2010

TO:          ROCKLIN BRANCH OFFICE

SUBJECT:     HOUSE OF YAHWEH        POL.   1161-864

FROM:        COMMERCIAL LINES


ATTACHED IS ONE CERTIFIED COPY OF THE ABOVE INSURED'S POLICY

AS REQUESTED BY:  MIKE GRIMES


IF WE CAN BE OF ANY FURTHER ASSISTANCE TO YOU, PLEASE LET US KNOW.



EXHIBIT

A-1

GuideOne Mutual Insurance Company • GuideOne Specialty Mutual Insurance Company • GuideOne Elite Insurance Company
GuideOne Lloyds Insurance Company • GuideOne America Insurance Company

AS-13707

1111 Ashworth Road
West Des Moines, IA 50265-3538
515.267.5000 Phone
www.guideone.com


GuideOne Insurance
PLACE YOUR FAITH IN THE EXPERT

This is to certify that the attached Memorandum of Policy No. 1161-864   of the

GuideOne Lloyds Insurance Company

issued to  HOUSE OF YAHWEH

located at  BOX 2498, ABILENE  TX  79604

is a replica representing the original POLICY.  The original insuring agreement was sent to the
policyholder or mortgagee.

_____
UNDERWRITING DIVISION

STATE OF IOWA

COUNTY OF POLK

Sworn to before me the ___14TH_____ day of ____SEPTEMBER, 2010_____

CAROL ALLEN
Commission Number 730369
My Commission
Sep 1/10/13

NOTARY PUBLIC

My Commission Expires_____

GuideOne Mutual Insurance Company • GuideOne Specialty Mutual Insurance Company • GuideOne Elite Insurance Company
GuideOne Lloyds Insurance Company • GuideOne America Insurance Company

AS-13207

042

# C O M M O N   P O L I C Y   D E C L A R A T I O N S

```
                                 POLICY NO. 1161-864        RENEWAL
NAMED INSURED                    PRODUCER NAME AND ADDRESS
   HOUSE OF YAHWEH                BOBBY JOHN WEEKS
                                 DBA: WEEKS HUNTER INS AGCY
   BOX 2498                       1041 HICKORY
                                 ABILENE          TX  79604
   ABILENE          TX  79604    42-940 (42 )  (915)676-1608
```

POLICY PERIOD: FROM   10/03/02     TO    10/03/03
   AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
---------------------------------------------------------------------------
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.   THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.
---------------------------------------------------------------------------
COMMERCIAL PROPERTY COVERAGE PART                        $   19,093.00
  FORMS APPLICABLE: CP0142/1292  CP0202/0296
  PCP2310/0396  PCP2311/1098  PCP2314/1098
  PCP7352/1098  PCP7357/1000  PCP7359/0600
---------------------------------------------------------------------------
COMMERCIAL GENERAL LIABILITY COVERAGE PART               $    2,755.00
  FORMS APPLICABLE: CG0103/1185  CG2147/0989
  CG2646/0896  IL0021/1185  PCG2510/0396
  PCG7543/0190  PCG7560/1098
---------------------------------------------------------------------------
COMMERCIAL CRIME COVERAGE PART                           $      100.00
  FORMS APPLICABLE: CR0111/0387  PCR2610/0396
  PCR2611/0396  PCR7601/0885
---------------------------------------------------------------------------
COMMERCIAL INLAND MARINE COVERAGE PART                   $         .00
  FORMS APPLICABLE:
---------------------------------------------------------------------------
MECHANICAL, ELECTRICAL AND PRESSURE EQUIPMENT COVERAGE PART $      .00
  FORMS APPLICABLE:
COVERAGE INCLUDED IN PROPERTY - SEE FORM PCP7357
---------------------------------------------------------------------------
FORMS APPLICABLE TO MORE THAN ONE COVERAGE PART:
  IL0003/1185  IL0168/0992  IL0171/0992
  IL0275/0695  IL0288/1192  PIL2200/1098
  PIL7209/0790

TOTAL PREMIUM OF   $21,948.00.

COUNTERSIGNED  08/07/02  BY _____
               (DATE)        (AUTHORIZED REPRESENTATIVE)

               ------------------------------------

GuideOne Insurance               GuideOne Lloyds
1111 ASHWORTH ROAD                 Insurance Company
WEST DES MOINES, IOWA 50265-3538
(515)267-5000

08/07/02                                    PJDL 71 00 07 89

                                                           043

# CALCULATION OF PREMIUM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> BUSINESS AUTO COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY — NEW YORK

The following is added:

> The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright,  Insurance  Services  Office,  Inc.,  1983
Copyright,  ISO Commercial  Risk Services, Inc., 1983

IL 00 03 11 85
Page 1 of 1

# TEXAS CHANGES — DUTIES

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL CRIME — LIABILITY FOR GUESTS' PROPERTY PREMISES COVERAGE FORM
> COMMERCIAL CRIME — LIABILITY FOR GUESTS' PROPERTY SAFE DEPOSIT BOX COVERAGE FORM
> COMMERCIAL CRIME — SAFE DEPOSITORY LIABILITY COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the DUTIES Condition.

We will notify the first Named Insured in writing of:

1. An initial offer to compromise or settle a claim made or "suit" brought against any insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured under this coverage. The noti will be given not later than the 30th day after the date of the settlement.

Copyright, Insurance Services Office, Inc., 1992

IL 01 68 09 92
Page 1 of 1

045

# TEXAS CHANGES — LOSS PAYMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> FARM COVERAGE PART — LIVESTOCK COVERAGE FORM
> FARM COVERAGE PART — MOBILE AGRICULTURAL MACHINERY
>   AND EQUIPMENT COVERAGE FORM
> COMMERCIAL INLAND MARINE COVERAGE PART

## A. LOSS PAYMENT

1. With respect to the BOILER AND MACHINERY COVERAGE PART and COMMERCIAL CRIME COVERAGE PART, the following conditions are added.

2. With respect to the COMMERCIAL INLAND MARINE COVERAGE PART, the following conditions replace Item **E.** LOSS PAYMENT in the Commercial Inland Marine Loss Conditions.

3. With respect to the FARM COVERAGE PART, the following conditions replace paragraphs **c.** and **f.** of the Loss Payment Condition:

   **a. Claims Handling**

   (1) Within 15 days after we receive written notice of claim, we will:

      (a) Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgement;

      (b) Begin any investigation of the claim; and

      (c) Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

   (2) We will notify you in writing as to whether:

      (a) The claim or part of the claim will be paid;

      (b) The claim or part of the claim has been denied, and inform you of the reasons for denial;

      (c) More information is necessary; or

      (d) We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

   We will provide notification, as described in **(2)(a)** through **(2)(d)** above, within:

      (i) 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

      (ii) 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

   If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

Copyright, Insurance Services Office, Inc., 1992

IL 01 71 09 92
Page 1 of 1

046

# TEXAS CHANGES — CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART — FARM LIABLITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART — FARM LIABILITY COVERAGE FORM
> FARM COVERAGE PART — LIVESTOCK COVERAGE FORM
> FARM COVERAGE PART — MOBILE AGRICULTURAL MACHINERY AND
>     EQUIPMENT COVERAGE FORM
> GLASS COVERAGE FORM
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **CANCELLATION** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

**a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(1)** Fraud in obtaining coverage;

**(2)** Failure to pay premiums when due;

**(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

Copyright, Insurance Services Office, Inc., 1993
Copyright, ISO Commercial Risk Services, Inc., 1993

IL 02 75 06 95

Page 1 of 2

047

(4) Loss of our reinsurance covering all or part of the risk covered by the policy; or

(5) If we have been placed in super- vision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**B.** The following condition is added and super- sedes any provision to the contrary.

**NONRENEWAL**

1. We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This Paragraph 2., applies unless the policy qualifies under Paragraph 3. below. If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date.   If notice is mailed or delivered less than 60 days before the expiration date, this polciy will remain in

effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of cover- age that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium asso- ciation, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the pol- icy, to:

   **a.**   The first Named Insured; and

   **b.**   Each unit-owner to whom we issued a certificate or memorandum of insurance.

   We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

Copyright, Insurance Services Office, Inc., 1993
Copyright, ISO Commercial Risk Services, Inc., 1993

# TEXAS CHANGES — CANCELLATION AND NONRENEWAL

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART

**A.** The following is added to paragraph **2.** of the **CANCELLATION** Common Policy Condition:

We pay cancel this policy for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**B.** The following condition is added:

**NONRENEWAL**

We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

Copyright, Insurance Services Office, Inc., 1992

# COMMON POLICY CONDITIONS

**CORNERSTONE PLUS**

All Coverage Parts included in this policy are subject to the following conditions:

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 60 days before the effective date of cancellation if we cancel for any other reason than nonpayment of premium.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraph **1.** and **2.** of this condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent